In the Matter of RONALD F. HARNISCH, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 10, 1987

### APPEARANCES OF COUNSEL

*Michael A. Gentile* for petitioner.

*John H. Doyle, III,* of counsel *(Anderson Russell Kill & Olick, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

This is an application by the Departmental Disciplinary Committee for an order pursuant to 22 NYCRR 603.4 (d) confirming the decision and recommendation of the Hearing Panel which, following a hearing, recommended that respondent be suspended from the practice of law for a period of six months.

Respondent, Ronald F. Harnisch, was admitted to practice as an attorney and counselor-at-law in the Second Judicial Department on January 27, 1971. He had previously served as an Assistant District Attorney in Queens County for three years and also had been a principal law clerk to a Justice of the Supreme Court. At all times during the period relating to the instant charges, he has maintained an office for the practice of law within the First Department.

In March 1987, respondent was served with notice of disciplinary charges, charging that he had engaged in acts of dishonesty and had conducted himself in a manner reflecting adversely upon his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (6). In September 1983, respondent arranged a meeting between a potential borrower and a director of the Port Authority Credit Union, with knowledge that the director would expect payment of something in value if the loan application were granted and that respondent thereafter received and retained a $5,000 check from the director after the loan had been approved.

The underlying facts relating to the charges are not in dispute. In July 1983, Ed Ross and his partner, Jack Feldman, entered into a contract to purchase an apartment building for $4,200,000. The contract included a closing date of September 22, 1983 and provided that "time was of the essence". Ross approached respondent to act as their broker to sell the contractual rights to purchase the building for $5,100,000. Harnisch, who had little experience in real estate transactions, contacted John Zacarro, a real estate broker, to locate a

purchaser. Respondent had previously met Zacarro when he worked with his wife, Geraldine Ferraro, at the Queens County District Attorney's office. Respondent agreed to share one half of the anticipated $100,000 broker's fee with Zacarro, who had procured John DeLorenzo as a purchaser, the latter accepting an assignment of the right to purchase the property.

In mid-September 1983, with the title closing date approaching, it appeared that DeLorenzo would not be able to secure the necessary financing. Harnisch, in exchange for Ross' agreement to extend a third mortgage, agreed to forego his share of the commission. At that time, Ed Farro, a member of Zacarro's organization, approached respondent to ascertain whether he could use his influence to obtain financing for DeLorenzo from the Port Authority Credit Union, whom Harnisch had represented in recent litigation. Thereafter, respondent spoke to Joseph Giordano, chairman of the Credit Union, who referred him to Thomas Albanese, director and chairman of its investment committee. Albanese told Harnisch to arrange a meeting with DeLorenzo, stating that if the loan closed, he would expect "something of value".

A meeting was held on September 16, 1983, attended by Harnisch, Albanese, DeLorenzo and Zacarro. Albanese stated he would recommend that the Credit Union make a short-term bridge loan of $550,000 for 90 days. Respondent heard one of DeLorenzo's representatives tell Albanese, in substance, that they would remember what he did, "we always take care of our friends".

Subsequently, the Credit Union approved the loan to DeLorenzo. Respondent prepared the necessary papers, had DeLorenzo sign the application and delivered them to the Credit Union's treasurer. The loan was consummated on October 3, 1983 and three checks were issued: (1) $22,000 prepaid interest for the Credit Union, (2) $475,000 payable to the attorneys for the seller and (3) $53,000 for DeLorenzo. Respondent's bill for preparation of the documents and services in connection with the loan was submitted to and paid by DeLorenzo. Thereafter, Harnisch received from Albanese the latter's personal check for $5,000 "for his trouble", which he deposited into his own account. He admitted that, at the time, he had reason to believe that Albanese had received the sum of $25,000 from DeLorenzo for arranging the loan.

One year after the transaction, respondent was questioned by the New York County District Attorney's office. He cooper-

ated fully, without any promise of immunity, recounting the facts underlying the 1983 loan transaction, including the payoff. James Kindler, Executive Assistant District Attorney, testified at the hearing that respondent had provided "invaluable" assistance in connection with the investigation, including, answering all questions, making phone calls, attending meetings and taping conversations with other participants. Respondent was thereafter granted immunity when he testified before the Grand Jury, with the only promise being that his cooperation would be made known to the Departmental Disciplinary Committee. At the DDC hearing, Harnisch admitted that what he had done was wrong, characterizing the receipt of the $5,000 check from Albanese as "hush money" and concluding that it was the worst mistake he had ever made. There were several individuals who testified as to respondent's good character and standing in the community.

Following the hearing, the Committee issued its report and recommendations, suggesting that respondent be suspended from the practice of law for six months, less than the two-year suspension sought by counsel for the Disciplinary Committee. The Hearing Panel recommendation was based, in part, upon respondent's remorse and admission of wrongdoing, in addition to his cooperation with the District Attorney's office in a successful prosecution.

On review of the record, we confirm the findings and conclusions reached by the Panel. Clearly, respondent was guilty of conduct involving dishonesty, adversely reflecting upon his fitness to practice law, in violation of DR 1-102 (A) (4) and (6). While we agree that the serious nature of the charges might warrant a more severe sanction than that recommended, we are persuaded that the mitigating factors, including his admissions, remorse and full and voluntary cooperation, all support a lesser sanction here.

The situation in this proceeding is different from that in *Matter of Olitt* (61 AD2d 416) wherein we imposed a three-year suspension in a case where the attorney, representing a builder, paid a gratuity to a zoning official to delay a zoning change application filed by a rival builder. As in this case, Olitt cooperated with the District Attorney's investigation, which resulted in indictments, and was granted transactional immunity. As we observed in *Olitt,* except for respondent's cooperation with law enforcement authorities, Olitt would have been disbarred. However, unlike Olitt, who had previously been suspended for two years, Harnisch here has no

prior disciplinary record and, as far as appears, his cooperation with the District Attorney was similarly instrumental.

Also distinguishable is *Matter of Drohan* (102 AD2d 185) wherein we rejected the Panel's recommendation as to sanction and suspended respondent for two years. In *Drohan,* respondent had been employed as a public relations officer by an engineering firm in the 1960's. He entered into an agreement with a political party leader to obtain cash contributions for the party in exchange for the leader's assistance in securing public works contracts for the engineering firm. Subsequently, in 1974 and 1975, when Drohan was a Court of Claims Judge, he accepted several payments totaling more than $10,000 from the engineering firm, retaining 25% and delivering the balance in cash to the same political party leader. Drohan also cooperated with law enforcement officers in the investigation and prosecution of the political leader and testified under immunity. Nevertheless, we rejected the Hearing Panel's recommendation that he be censured and imposed a more severe sanction in view of the fact that, at the time of the receipt and payment of the money, he was a Judge and "he facilitated and participated in implementation of a corrupt agreement involving surreptitious receipt and payments of cash, from which he personally profited" *(supra,* 102 AD2d, at 187). As a result, we found the appropriate sanction to be a two-year suspension from the practice of law. As noted, the critical factors which impelled a greater sanction in *Drohan* are not present here.

While respondent's misconduct was unquestionably serious, we find ourselves in agreement with the Hearing Panel that, under these circumstances, a six-month suspension is adequate to protect the public interest, taking into account respondent's background and all of the underlying facts. Respondent is remorseful, having openly admitted his wrongdoing and his full and voluntary cooperation with law enforcement officials resulted in a successful criminal prosecution. He had a prior unblemished record in terms of disciplinary action and there were several witnesses who testified as to his reputation for honesty, integrity and compliance with the law in the past.

Although we agree that the situations in *Matter of Olitt (supra)* and *Matter of Drohan (supra)* are more egregious, we disagree with respondent's argument that a public censure would suffice. It is true that he did not initiate improper conduct but it clearly appears that he acquiesced and participated in it and accepted and retained the illegal payment,

which he recognized and characterized as "hush money". Under all the circumstances, we agree with the Hearing Panel that the appropriate sanction to be imposed is that respondent be suspended from the practice of law for a period of six months.

Accordingly, the motion by the Departmental Disciplinary Committee is granted, the decision and recommendation of the Hearing Panel should be confirmed and respondent should be suspended from the practice of law for a period of six months and until further order of this court.

Ross, J. P., CARRO, ASCH, KASSAL and SMITH, JJ., concur.

Respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of six months, effective January 10, 1988, and until the further order of this court.